**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ELIZABETH NOBLE**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TRIZETTO PROVIDER SOLUTIONS LLC** and **GENESIS HEALTHCARE HOLDING COMPANY INC.** d/b/a **GENESIS HEALTHCARE**,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Elizabeth Noble ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Genesis Healthcare Holding Company, Inc. d/b/a Genesis Healthcare ("Genesis"), TriZetto Provider Solutions LLC ("TriZetto"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. This class action arises from Defendants' failure to protect highly sensitive data.

2. Defendant TriZetto is a provider of revenue management services to physicians, hospitals, and health systems, based in Earth City, Missouri.[1]

[1] *The TriZetto Provider Solutions Story*, TRIZETTO PROVIDER SOLUTIONS, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 16, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).

3. Defendant Genesis is a nonprofit healthcare provider offering a broad continuum of short- and long-term medical, rehabilitative, and senior living services across nearly 200 centers in 17 states, with a focus on improving overall vitality and well-being.[2] On information and belief, Defendant Genesis is an enterprise client of TriZetto.[3]

4. As such, TriZetto stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about its current and former employees and/or consumers of Defendant Genesis.

5. But such PII/PHI was inadequately protected and thus exposed to cybercriminals in a data breach (the "Data Breach").

6. It is unknown for precisely how long the cybercriminals had access to Defendants' network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its consumers' PII/PHI.

7. On information and belief, cybercriminals were able to breach Defendants' systems because Defendant failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendants' failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

---

[2] *Our Services*, GENESIS, https://www.genesishcc.com/our-services/rehabilitation-therapy/our-services (last visited Dec. 23, 2025).

[3] *Genesis Healthcare System*, TRIZETTO PROVIDER SOLUTIONS, https://www.trizettoprovider.com/wp-content/uploads/CaseStudy_AutoEligibility_GenesisHealthcareSystem.pdf (last visited Dec. 23, 2025).

8. Plaintiff is a Data Breach victim, having received a breach notice. She brings this class action on behalf of herself, and all others harmed by Defendants' misconduct.

9. The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this Data Breach, their consumers' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

**PARTIES**

10. Plaintiff, Elizabeth Noble is a natural person and a citizen of Zanesville, Ohio. She is domiciled in Ohio, where she intends to remain.

11. Defendant, TriZetto Provider Solutions LLC, is a foreign limited liability company incorporated in Delaware and with its principal place of business at 221 Bolivar St. Jefferson City, Missouri, 65101.

12. Defendant Genesis Healthcare Inc. is a limited liability company incorporated in Delaware and with its principal place of business located at 101 East State Street, Kennett Square, Pennsylvania, 19348; it operates healthcare facilities, including locations within the State of New Jersey.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one Plaintiff is a citizen of a different state than at least one Defendant.[4] And there are over 100 putative Class Members.

[4] Under the Class Action Fairness Act, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); Thus, as an LLC, Defendant TriZetto is a citizen of Delaware (state of formation) and Missouri (principal place of business).

14. This Court has personal jurisdiction over Defendants because Defendant Genesis conducts business in the State of New Jersey through its healthcare facilities located within the State, and Defendant TriZetto conducts business in New Jersey by providing services to Genesis. Defendants have purposefully availed themselves of the privilege of conducting activities in New Jersey, and Plaintiff's claims arise out of or relate to those activities.

15. Venue is proper in this District because Defendant Genesis maintains healthcare facilities in New Jersey, Defendant TriZetto provides services used by Genesis in New Jersey, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

***Defendant Collected and Stored the PII/PHI of Plaintiff and the Class***

16. Defendant TriZetto is a provider of revenue management services to physicians, hospitals, and health systems, based in Earth City, Missouri.[5]

17. Defendant Genesis is a nonprofit healthcare provider offering a broad continuum of short- and long-term medical, rehabilitative, and senior living services across nearly 200 centers in 17 states, with a focus on improving overall vitality and well-being.[6] On information and belief, Defendant Genesis is an enterprise client of TriZetto.[7]

---

[5] *The TriZetto Provider Solutions Story*, TRIZETTO PROVIDER SOLUTIONS, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 16, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).

[6] *Our Services*, GENESIS, https://www.genesishcc.com/our-services/rehabilitation-therapy/our-services (last visited Dec. 23, 2025).

[7] *Genesis Healthcare System*, TRIZETTO PROVIDER SOLUTIONS, https://www.trizettoprovider.com/wp-content/uploads/CaseStudy_AutoEligibility_GenesisHealthcareSystem.pdf (last visited Dec. 23, 2025).

18. As part of its business, Defendant Genesis collects and maintains the PII/PHI of thousands of their current and former employees and/or patients.

19. As part of its businesses, Defendant Genesis then sends such PII/PHI to Defendant TriZetto.

20. As part of its business, Defendant TriZetto collects and maintains the PII/PHI of the current and former employees and/or patients of Defendant Genesis.

21. In collecting and maintaining the PII/PHI, Defendants agreed they would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII/PHI.

22. Under state and federal law, businesses like Defendants' have duties to protect employee and consumers' PII/PHI and to notify them about breaches.

23. Defendant TriZetto recognizes these duties, advertising in its "Privacy Notice" that:

a. "Cognizant [TriZetto] implements appropriate security measures designed to prevent unlawful or unauthorized processing of personal information and accidental loss of or damage to personal information."[8]

b. "The data collected via our Sites is stored in a secure server with our ISP who will take periodic backups of such data."[9]

c. "Your personal information will be retained only for so long as reasonably necessary for the purposes set out in this Privacy Notice in accordance with

---

[8] *Cognizant website Privacy Notice*, COGNIZANT, https://www.cognizant.com/us/en/privacy-notice (last visited Dec. 16, 2025).
[9] *Id*.

applicable laws, including for the purposes of satisfying any legal, regulatory, accounting or reporting requirements."[10]

24. Defendant Genesis recognizes these duties, advertising in its "Privacy Statement" that:

a. "Genesis HealthCare LLC has taken steps to make all information received from our online visitors as secure as possible against unauthorized access and use. All information is protected by our security measures, which are periodically reviewed."[11]

b. "We do not provide or resell any personally identifiable information collected on our web sites to any 3rd parties unless such disclosure is necessary to (a) comply with a court order or other legal process, or (b) protect our, your or a third party's rights or property."[12]

***Defendants' Data Breach***

25. On October 2, 2025, Defendant TriZetto was hacked in the Data Breach—which comprised the data of its enterprise consumers.[13]

26. Worryingly, Defendant TriZetto already admitted that:

a. "Suspicious activity was identified within a web portal used by some of its healthcare provider customers to access TriZetto systems,"[14]

---

[10] *Id.*
[11] *Online Privacy*, GENESIS, https://www.genesishcc.com/about-us/online-privacy (last visited Dec. 23, 2025).
[12] *Id.*
[13] *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).
[14] *Id.*

b. "While the cybersecurity incident was only recently detected, the unauthorized access has been ongoing for a considerable period of time."[15]

c. "The forensic investigation determined that an unauthorized third party first started accessing historical eligibility transaction reports within the TriZetto system in November 2024, almost a year before the unauthorized access was detected."[16]

d. "The reports within its storage system contained the protected health information of patients of certain healthcare provider clients."[17]

27. Because of Defendants' Data Breach, at least the following types of PII/PHI were compromised:

a. Name of individual;

b. Address;

c. Date of birth;

d. Social Security Number Information;

e. Medical Information; and

f. Health Insurance Information

28. Currently, the precise number of persons injured is unclear. But upon information and belief, the size of the putative Class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative Class includes thousands of members—as it includes its employees/consumers.

---

[15] *Id.*
[16] *Id.*
[17] *Id.*

29. And yet, Defendant TriZetto waited until December 9, 2025, before it began notifying the Class—a full sixty-eight days after the Data Breach was discovered.[18]

30. Thus, Defendants kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

31. And when Defendant TriZetto did notify Plaintiff and the Class of the Data Breach, Defendant TriZetto acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class:

a. "… beginning in November 2024, an unauthorized actor accessed certain historical eligibility transaction reports stored within their system."[19]

b. "These reports included protected health information (PHI) for individuals associated with our organization."[20]

32. Defendants failed their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendants caused widespread injury and monetary damages.

---

[18] *Data Breach Notice*, SOUTH CENTRAL PUBLIC HEALTH DISTRICT, https://www.classaction.org/media/trizetto-data-breach-attorney-letter-2025.pdf (last visited Dec. 16, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).
[19] *Data Breach Notice*, SOUTH CENTRAL PUBLIC HEALTH DISTRICT, https://www.classaction.org/media/trizetto-data-breach-attorney-letter-2025.pdf (last visited Dec. 16, 2025).
[20] *Id*.

33. Since the breach, Defendant TriZetto claims that it has offered to handle required breach notifications and regulatory reporting on behalf of affected clients and to cover the costs of credit monitoring and identity theft protection services.[21]

34. But such simple declarations are insufficient to ensure that Plaintiff's and Class Members' PII/PHI will be protected from additional exposure in a subsequent data breach.

35. Further, the Notice of Data Breach shows that Defendant TriZetto cannot—or will not—determine the full scope of the Data Breach, as Defendant TriZetto has been unable to determine precisely what information was stolen and when.

36. Defendant TriZetto has done little to remedy its Data Breach. True, Defendant TriZetto has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendants inflicted upon them.

37. Because of Defendants' Data Breach, the sensitive PII/PHI of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

***Plaintiff Elizabeth Noble's Experiences and Injuries***

38. Plaintiff Elizabeth Noble is a current patient of Defendant Genesis and has been a patient since 2020.

39. Thus, Defendants TriZetto and Genesis obtained and maintained Plaintiff's PII/PHI.

40. As a result, Plaintiff was injured by Defendants' Data Breach.

---

[21] *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).

41. Plaintiff is very careful about the privacy and security of her PII/PHI. She does not knowingly transmit her PII/PHI over the internet in an unsafe manner. She is careful to store any documents containing her PII/PHI in a secure location.

42. As a condition of Plaintiff's involvement with Defendant Genesis, Defendants obtained her PII/PHI.

43. Plaintiff provided her PII/PHI to Defendants and trusted the companies would use reasonable measures to protect it according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continued to maintain Plaintiff's PII/PHI and have a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

44. Thus, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

45. Through their Data Breach, Defendants compromised Plaintiff's PII/PHI.

46. Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft.

47. And in the aftermath of the Data Breach, Plaintiff suffered from a spike in spam and scam text messages and phone calls.

48. Plaintiff fears for her personal health and financial security and worries about what information was exposed in the Data Breach.

49. Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

50. Plaintiff suffered actual injury from the exposure and theft of her PII/PHI—which violates her rights to privacy.

51. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendants were required to adequately protect.

52. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

53. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

54. Today, Plaintiff has a continuing interest in ensuring that her PII/PHI—which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

***Consumers Prioritize Data Security***

55. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[22] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer

[22] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).

respondents saying they won't purchase from an organization they don't trust with their data."[23]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[24]

c. 89% of consumers stated that "I care about data privacy."[25]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[26]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[27]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[28]

***Plaintiff and the Proposed Class Suffered Common Injuries and Damages***

56. Because of Defendants' failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. loss of the opportunity to control how their PII/PHI is used;

b. diminution in value of their PII/PHI;

[23] *Id*. at 3.
[24] *Id*.
[25] *Id*. at 9.
[26] *Id*.
[27] *Id*.
[28] *Id*. at 11.

c. compromise and continuing publication of their PII/PHI;

d. out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identity theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen PII/PHI; and

h. continued risk to their PII/PHI—which remains in Defendants' possession—and is thus at risk for futures breaches so long as Defendants fail to take appropriate measures to protect the PII/PHI.

***Substantially Increased Risk of Identity Theft and Fraud***

57. Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

58. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201 (2013).

59. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id.*

60. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information.

Criminals monetize the data by selling the stolen information on the internet black market (aka the Dark Web) to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

61. The "Dark Web" is an unindexed layer of the internet that requires special software or authentication to access.[29] Criminals in particular favor the Dark Web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, Dark Web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the Dark Web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[30] This prevents Dark Web marketplaces from being easily monitored by authorities or accessed by those not in the know.

62. The unencrypted PII/PHI of Plaintiff and Class Members has or will end up for sale on the Dark Web because that is the modus operandi of hackers. In addition, unencrypted and detailed PII/PHI may fall into the hands of companies that will use it for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Plaintiff's and Class Members' PII/PHI.

63. Theft of Social Security numbers also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. To obtain a new number, a breach victim must demonstrate ongoing harm from misuse of their SSN, and a new SSN will not be provided until after the victim has suffered the harm.

---

[29] *What Is the Dark Web?,* EXPERIAN, https://www.experian.com/blogs/ask-experian/what-isthe-dark-web/ (last visited July 9, 2025).
[30] *Id.*

64. In particular, the theft of Social Security numbers—in combination with other PII/PHI (e.g., name, address, date of birth)—provides cybercriminals with a "skeleton key" to commit rampant fraud and identity theft.

65. For example, cybersecurity expert Jim Stickley explained to Time Magazine that "[i]f I have your name and your Social Security number, and you haven't gotten a credit freeze yet, you're easy pickings . . . With that, you can do whatever you want . . . You can become that person."[31] For context, Jim Stickley is a "penetration tester" who is employed by businesses "to infiltrate their systems in order to find flaws they can fix before the bad guys exploit them."[32]

66. There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years later. An individual may not know that their Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

67. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.[33]

---

[31] Patrick L. Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME MAGAZINE (Aug. 5, 2019) https://time.com/5643643/capital-one-equifax-data-breach-social-security/.
[32] *Id.*
[33] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. SYSTEMICS, CYBERNETICS & INFORMATICS 9 (2019) http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

68. It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their PII/PHI is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

69. Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

70. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

71. Identity thieves can also use an individual's personal data and PII/PHI to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house or receive medical services in the victim's name, and may even

give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name.[34]

72. One example of criminals piecing together bits and pieces of compromised PII/PHI to create comprehensive dossiers on individuals is called "Fullz" packages.[35] These dossiers are both shockingly accurate and comprehensive. With "Fullz" packages, cybercriminals can cross-reference two sources of PII/PHI to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. For example, they can combine the stolen PII/PHI, and with unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

73. The development of "Fullz" packages means that the PII/PHI exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals

---

[34] *Identity Theft and Your Social Security Number,* SOCIAL SECURITY ADMINISTRATION, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf. (last visited July 9, 2025).

[35] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.,* Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm,* KREBS ON SECURITY (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/ medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

(such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen PII/PHI is being misused, and that such misuse is traceable to the Data Breach.

74. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[36]

75. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Yet, Defendant failed to rapidly report to Plaintiff and the Class that their PII/PHI was stolen. Defendants' failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injuries by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

76. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

77. In addition to out-of-pocket expenses that can exceed thousands of dollars, and the emotional toll identity theft can take, some victims must spend considerable time repairing the damage caused by the theft of their PII/PHI. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor

---

[36] *2019 Internet Crime Report* (Feb. 11, 2020) FED. BUREAU INTELLIGENCE, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last visited July 9, 2025).

their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

78. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII/PHI. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

***Defendants Knew—Or Should Have Known—of the Risk of a Data Breach***

79. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

80. In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).[37]

81. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[38]

82. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations have experienced cyberattacks.[39]

83. Therefore, the increase in such attacks, and attendant risk of future attacks, was

---

[37] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.
[38] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.
[39] Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Nov. 23, 2025).

widely known to the public and to anyone in Defendants' industry, including Defendants.

***Defendants Could Have Prevented the Data Breach***

84. Data breaches are preventable.[40] Indeed, the American Bar Association published a treatise titled the *Data Breach and Encryption Handbook* wherein the author explained that:

a. "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[41]

b. "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[42]

c. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . .. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [43]

***Defendants Failed to Follow FTC Guidelines***

85. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

---

[40] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, DATA BREACH AND ENCRYPTION HANDBOOK (2012).
[41] *Id.* at 17.
[42] *Id.* at 28.
[43] *Id.*

86. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[44] The FTC declared that, *inter alia*, businesses must:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

87. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

88. Furthermore, the FTC explains that companies must:

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

89. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

---

[44] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

90. In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former consumer's and employee's data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

91. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendants. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

92. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

93. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

94. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

***Defendants Violated HIPAA***

95. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[45]

96. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI and PHI is properly maintained.[46]

97. The Data Breach itself resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

a. failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

[45] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[46] 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

b. failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

e. failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

98. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

**CLASS ACTION ALLEGATIONS**

99. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach discovered by TriZetto in December 2025, including all those individuals who received notice of the breach.

100. Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants' officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

101. Plaintiff reserves the right to amend the Class definition.

102. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

103. <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control. After all, Defendant TriZetto already identified some individuals and sent them data breach notices.

104. <u>Numerosity</u>. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes thousands of members.

105. Typicality. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

106. Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

107. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a. Whether Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendants were negligent in maintaining, protecting, and securing PII/PHI;

d. Whether Defendants breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

e. Whether Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

f. Whether Defendants' Breach Notice was reasonable;

g. Whether the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. Whether Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

108. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

109. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

110. Plaintiff and the Class entrusted their PII/PHI to Defendants on the premise and with the understanding that Defendants would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

111. Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry

standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

112. Defendants have full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

113. Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiff and Class Members' PII/PHI.

114. Defendants owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the PII/PHI in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII/PHI.

115. Thus, Defendants owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

116. Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

117. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

118. Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendants with their confidential PII/PHI, a necessary part of obtaining services from Defendants.

119. The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendants hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII/PHI —whether by malware or otherwise.

120. PII/PHI is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

121. Defendants improperly and inadequately safeguarded the PII/PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

122. Defendants breached these duties as evidenced by the Data Breach.

123. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII/PHI by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

124. Defendants breached their duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

125. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

126. Defendants have admitted that the PII/PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

127. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

128. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

129. Defendants' breach of their common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their

PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

130. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

131. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII/PHI.

132. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the Class Members' sensitive PII/PHI.

133. Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

134. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII/PHI Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

135. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

136. But for Defendants' wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

137. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants were failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

138. Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class Members' PHI.

139. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of PHI that Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

140. Defendants' various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

141. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## <u>THIRD CAUSE OF ACTION</u>
## Breach of Third-Party Beneficiary Contract

**(On Behalf of Plaintiff and the Class)**

142. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

143. Upon information and belief, TriZetto entered into valid contracts with its clients, including Genesis, to provide software products and/or services, including business associate agreements under HIPAA, which included data security practices, procedures, and protocols sufficient to safeguard the PII/PHI that was to be entrusted to TriZetto.

144. Such contracts were made expressly for the benefit of Plaintiff and the Class, as it was their PII/PHI that Defendants agreed to receive and protect through their services.

145. The benefit of collection and protection of the PII/PHI belonging to Plaintiff and the Class was the direct and primary objective of the contracting parties, and Plaintiff and the Class members were direct and express beneficiaries of such contracts.

146. Plaintiff and the Class are also intended third-party beneficiaries of these contracts because recognizing them as such is appropriate to effectuate the intentions of the parties, and the circumstances indicate that Defendants intended to give the beneficiaries the benefit of the promised performance.

147. Defendants knew that if they were to breach these contracts, healthcare patients, including Plaintiff and the Class, would be harmed by, among other harms, fraudulent transactions and the need to expend time and money to protect themselves from identity theft.

148. Defendants breached their contracts when they failed to use reasonable data security measures and/or business associate monitoring measures and allowed the data breach to occur.

149. As foreseen, Plaintiff and the Class were harmed by Defendants' failure to use reasonable data security measures to securely store and protect the files in their care, including but

not limited to, the continuous and substantial risk of harm through the loss of their PII/PHI. Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

150. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

151. Plaintiff and Class Members were required to provide their PII/PHI to Defendants as a condition of receiving medical services provided by Defendants. Plaintiff and Class Members provided their PII/PHI to Defendants or their third-party agents in exchange for Defendant TriZetto's medical services.

152. Plaintiff and Class Members reasonably understood that a portion of the funds they paid /would be used to pay for adequate cybersecurity measures.

153. Plaintiff and Class Members reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and its internal policies.

154. Plaintiff and the Class Members accepted Defendants' offers by disclosing their PII/PHI to Defendants or their third-party agents in exchange for medical services.

155. In turn, and through internal policies, Defendants agreed to protect and not disclose the PII/PHI to unauthorized persons.

156. In their Privacy Policies, Defendants represented that they had a legal duty to protect Plaintiff's and Class Member's PII/PHI.

157. Implicit in the parties' agreement was that Defendants would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

158. After all, Plaintiff and Class Members would not have entrusted their PII/PHI to Defendants in the absence of such an agreement with Defendants.

159. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendants.

160. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

161. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

162. Defendants materially breached the contracts they entered with Plaintiff and Class Members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendants created, received, maintained, and transmitted.

163. In these and other ways, Defendants violated their duty of good faith and fair dealing.

164. Defendants' material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

165. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

166. Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

**FIFTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

167. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

168. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

169. Defendants owed a duty to their current and former patients, including Plaintiff and the Class, to keep this information confidential.

170. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' PII/PHI is highly offensive to a reasonable person.

171. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendants, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

172. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

173. Defendants acted with a knowing state of mind when they permitted the Data Breach because it knew its information security practices were inadequate.

174. Defendants acted with a knowing state of mind when they failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

175. Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

176. As a proximate result of Defendants' acts and omissions, the private and sensitive PII/PHI of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

177. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

178. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since

their PII/PHI are still maintained by Defendants with their inadequate cybersecurity system and policies.

179. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII/PHI of Plaintiff and the Class.

180. In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## <u>SIXTH CAUSE OF ACTION</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

181. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

182. This claim is pleaded in the alternative to the breach of implied contract claim.

183. Plaintiff and Class Members conferred a benefit upon Defendants. After all, Defendants benefitted from (1) using their PII/PHI to provide medical services, and (2) accepting payment.

184. Defendants appreciated or had knowledge of the benefits they received from Plaintiff and Class Members.

185. Plaintiff and Class Members reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and its internal policies.

186. Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII/PHI.

187. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

188. Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and Class Members' (1) PII/PHI and (2) payment because Defendants failed to adequately protect their PII/PHI.

189. Plaintiff and Class Members have no adequate remedy at law.

190. Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

## SEVENTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

191. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

192. Given the relationship between Defendants and Plaintiff and Class Members, where Defendants became guardian of Plaintiff's and Class Members' PII/PHI, Defendants became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff and Class Members' PII/PHI; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

193. Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendants' relationship with them—especially to secure their PII/PHI.

194. Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class Members would not have entrusted Defendants, or anyone in Defendants' position, to retain their PII/PHI had they known the reality of Defendants' inadequate data security practices.

195. Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' PII/PHI.

196. Defendants also breached their fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

197. As a direct and proximate result of Defendants' breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**EIGTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

198. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

199. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

200. In the fallout of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiff

alleges that Defendants' actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

201. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b. Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendants breached, and continue to breach, their duties by failing to use reasonable measures to the data entrusted to them; and

d. Defendants' breaches of their duties caused—and continues to cause—injuries to Plaintiff and Class Members.

202. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to it.

203. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experiences a second data breach.

204. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class Members' injuries.

205. If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Defendants could experience if an injunction is issued.

206. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

**NINTH CAUSE OF ACTION**
**Breach of Confidence**
**(On Behalf of Plaintiff and the Class)**

207. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

208. Plaintiff and the Class members have an interest, both equitable and legal, in the PII/PHI about them that was conveyed to, collected by, and maintained by Defendants and ultimately accessed and acquired in the Data Breach.

209. As healthcare service providers, Defendants have a special relationship with their patients, including Plaintiff and Class members. Because of that special relationship, Defendants were provided with and stored Plaintiff's and Class members' PII/PHI and had a duty to maintain such Information in confidence.

210. Patients like Plaintiff and Class members have a privacy interest in personal medical and other matters, and Defendants had a duty not to disclose such matters concerning their patients.

211. As a result of the parties' relationship, Defendants had possession and knowledge of highly sensitive and confidential PII/PHI belonging to Plaintiff and the Class members, information that was not generally known.

212. Plaintiff and the Class members did not consent nor authorize Defendants to release or disclose their PII/PHI to an unknown criminal actor.

213. Defendants breached their duty of confidence owed to Plaintiff and the Class members by, among other things: (a) mismanaging their computer systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of

patient information that resulted in the unauthorized access and compromise of Plaintiff's and Class members' PII/PHI; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the Breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies and practices published to their patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiff's and Class members' PII/PHI to a criminal third party.

214. But for Defendants' wrongful breach of their duty of confidence owed to Plaintiff and Class members, their PII/PHI would not have been compromised.

215. As a direct and proximate result of Defendants' wrongful breach of their duty of confidence, Plaintiff and the Class members have suffered and will continue to suffer the injuries alleged herein.

216. It would be inequitable for Defendants to retain the benefit of controlling and maintaining Plaintiff's and Class members' PII/PHI at the expense of Plaintiff and the Class members.

217. Plaintiff and the Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial

**PRAYER FOR RELIEF**

Plaintiff and Class Members respectfully request judgment against Defendants and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F. Awarding attorneys' fees and costs, as allowed by law;

G. Awarding prejudgment and post-judgment interest, as provided by law;

H. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I. Granting other relief that this Court finds appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Dated: December 23, 2025

Respectfully submitted,

By: */s/ Kenneth J. Grunfeld*

Kenneth J. Grunfeld, Esquire (NJ#026091999)
**KOPELOWITZ OSTROW P.A.**
65 Overhill Road, Suite 500
Bala Cynwyd, PA 19904
Tel: 954.525.4100
grunfeld@kolawyers.com

Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

**Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*